Our final case of the morning, 21-2101, United States v. Veneno. Good morning, Your Honors, and may it please the Court, Alan Morritson on behalf of Appellant Quentin Veneno, Jr. The Constitution promises that no one will be convicted of a crime unless they have had a fair trial, and an essential component of the fair trial is that it be public. Counsel, when you walked into court on the first day of trial, what was your understanding of New Mexico's COVID protocols for that trial? Well, I did not walk into court, but when counsel walked into court, the record is not clear on what counsel's understanding was of New Mexico's COVID protocols. The record suggests that... I mean, there was a COVID order. There was a COVID protocol order, wasn't there? I'm not sure what order. There was an administrative order that the Federal District Court of New Mexico had issued, and then there was a plan for resumption of public trials, neither of which had been entered on the docket, but both of which had been entered by the court, but that were not on the docket. There'd be public records that the court could access, I assume. I think that's fair to say, yeah. I mean, so where I wanted to focus the court's attention was on the closure of the courtroom for the two-hour voir dire session on the first morning of trial. So regardless of what administrative order had been entered or what was in effect in New Mexico, it is undisputed on the record that we have that there had been no discussion of what kind of feed would be provided during trial. I'm sorry. No, you go ahead. Well, that's why I'm asking this question. I think that that's really important to know that if counsel is walking into court expecting that the courtroom is going to be partially closed in some way because of COVID and knows that there's going to be audio and video streaming available, and then your argument proceeds that doesn't happen for the first two hours of jury selection, that's different than if you didn't have any idea that there would be no audio. I mean, in other words, your expectation about what to your point of departure for objection sort of, do you understand what I'm asking? I understand completely, and I agree that it's key, and all that we have is the record that's before the court. I wasn't there. I'm not that counsel. So all we can do is review the record that's before the court. That's all I'm asking you to do. I'm certainly not asking you to give us something outside the record. But did counsel walking in, he got an email from the court, some sort of a notification, right? He did. And what did that notify? Was that an ECF type of notification? We don't know. You don't know? I don't know from the record. The record does not reveal that information. What we have is – Well, there is something on the record for the afternoon that there's a public access link. Right. What I'm saying is, after the two-hour session, first two-hour session of voir dire, for the first time, the government stood and said, Your Honor, we are concerned about providing only audio for the morning voir dire session. And so we would ask that you provide your reasoning. If only audio can be provided, we would ask that you provide the reason why we can't have a public trial and why only audio is being provided. So is it fair to assume that everyone thought that there was going to be audio-video? That's how I read the record. And in fact, when defense counsel stood at that point in time, he told the court, I had assumed that the link that the courtroom deputy sent out was for both audio and video. But I think this highlights that the district court, in its admirable focus on keeping people safe during the pandemic, was insufficiently attentive to the public trial rights of my client because there was no discussion. There were no findings made on the record that Waller requires about the overriding interest that was being served and that the closure was no broader than necessary and that reasonable alternatives had been explored. And if you look at Pressley v. Georgia, we know that voir dire is part of the public trial right. There's been no suggestion on the part of the government that this was de minimis. And it's very clear that counsel for defendant objected to the audio-only feed for that two-hour period at the first chance he had after understanding that that's what had happened. So there's no suggestion in the record that he knew coming into trial that first morning that only audio was being provided. Who has the burden of proving whether he knew audio or when he first learned that audio was the only part of the feed being included that morning? In terms of burden, you know, I would suggest, of course, that it's the government's burden. Why? I mean, he's the one who's saying my trial rights, public trial rights are being violated. Well, the only place we can look at is Rule 51B. Rule 51B is what provides guidance as to when defense counsel is obligated to object. And that rule says when a ruling or order is made or sought. That's when a defense counsel is obligated to object. If he has no opportunity to object, then it can't work to his prejudice. That's Rule 51B. Well, that's not to say he doesn't have the burden of proof. It's to say that he can meet that burden of proof by saying, I didn't have a duty until a certain point in time. Well, the burden of proof is not discussed in the briefing. And my only point is, if it's our burden, we've carried it. And if you look at the Second Circuit's decision. That's conclusory. How did you carry it? Well, we carried it by virtue of what the record shows. The record shows that no one knew. I mean, if you look at the government's contention on when we learned this. The only thing they point to is the courtroom deputy sending a link the morning of trial. We don't know. And so we're expecting trial counsel. Did that link say this is a link for audio and visual? Or did it just say it's a link? We don't know. Yeah. But the point is. So that comes back a little bit to burden. But we have defense counsel stating on the record that my understanding was that it was for audio and video. I think he said I assumed it was for audio and video. Fair enough. I assumed it was for audio and video. But the point is, is at what point is he supposed to object to that if it's sent the morning of the first day of trial. And he's in the courtroom. Are we asking that counsel to click on the link to ensure that it's audio and video when the court has not said what the circumstances will be? The government has not asked what the circumstances will be? Well, that was, again, going back to my question about what your understanding was on the first day. Right? So if, as Judge Carson points out, you agreed the assumption was there would be audio visual. So if there was no, if there wasn't both, that would be contrary to your assumption. At that point you objected, right? That's correct. Okay. And you don't know whether sort of the status quo in the District of New Mexico with respect to its standing order and its trial plan provided for audio, video? The plan for the resumption of jury trials stated that the video feed should be provided is the way that the language reads. And so I think it was reasonable on the part of counsel to assume that only video, that video and audio would be provided. And in fact, when counsel said I assumed that it would be audio and video, the district court's response was we do not have the capability for video, which was untrue. Because immediately after the break, the court returned and said now we're going to provide video. So this sounds like it was, you know, everyone was doing their best. This was the first trial, right? During COVID. Isn't this the first criminal trial? That's my understanding. So it sounds like the district court made a mistake, right? Maybe made just, it was inadvertent. And so why wouldn't that be trivial, sort of as we, as in quotes, trivial under our understanding of the public trial doctrine? Well, it's not trivial because it's, whether it's a mistake or not a mistake, it's still infringed on the defendant's public trial right. This is 70 pages of trial transcript. And if you look at the cases that deal with de minimis violations of the public trial right, they're five minutes. They're, you know, someone was excluded for a brief period. There's no case. Those are full exclusions, though, right? Yeah, I mean, those aren't situations where there is the ability for a broadcast of some sort. I mean, whether you think it's sufficient or not. Well, this is under the test that everyone has applied, except apparently for the Fifth Circuit and Ansari. This is a total closure. Providing an audio stream of the proceedings that are going on inside a courtroom does not make the closure partial. Has a court ever ruled on that specifically? The Ninth Circuit just ruled on that in Allen. And that's exactly what they held. How about before this happened? Had a court ever ruled on that specifically, that if you provide an audio feed, but otherwise close the proceeding, it is a total closure? Not that I'm aware of. I'm also not aware of any holding to the contrary. Yeah, I mean, at least as far as what precedent was out there, don't we have to look at this on what was present and available to the district court at the time this happened? Well, not on de novo review. The question is on de novo review whether this was error, whether this was a violation of a public trial right. And as you read the cases, all of which say... Agreed, but the district court's decision had to be reasonable. No, no, no. The district court's decision had to comply with Waller. I mean, the question is... I mean, but isn't that part of it? Well, the question is... Whether the closure was reasonable? The question is whether the closure was partial or total under most courts. Now, the Supreme Court hasn't ever blessed that distinction. But the first question is, was the closure total or partial? And at the time, I mean, if you are excluding everyone from the courtroom... Because imagine a situation where all you're providing is a live transcript of what's happening in a trial. Is that really the equivalent? Does that really make that a partial closure? Every court that's addressed this question has said the exclusion of every non-trial participant, physical exclusion of every non-trial participant in the courtroom is a total closure. But every one of those cases, the exclusion meant a total exclusion. People excluded did not have an audio or video feed. So it raised a totally different situation. And the language was broad because there was no lesser alternative. Well, I respectfully disagree with that. I mean, the right from the time of the founding to today is to have spectators, loved ones, and the press in the courtroom. The right to have a public trial, which means that people can review and know on real time what's going on. And that right has never been said. There's no court before these that are coming up right now about whether that right can be met by a alternative when the government can show a sufficient government need, public policy need to make that restriction. Respectfully, that puts the thumb on the scale. Because as soon as you say that we can exclude people from the courtroom as long as they have some other way, and again, this is audio. And a key component of the public trial right is public observation. They had the audio. They had the audio. That's my point. Why didn't you challenge the entire trial? I mean, you apparently were satisfied when audio and video was provided so that you're not quarreling with the remote access being satisfaction of a public trial. No, we challenged that as well. But on appeal, you're not challenging. On appeal, we're challenging that as well. I was focusing my discussion on the audio component because I think it's the clearest evidence of error. My point really, I should have articulated it this way. Your point is that you are articulating that there's something significantly different when the video part is gone but you still have the audio part. That's what the focus of your argument has been. This morning it is because I think it's the cleanest way to reverse and vacate the conviction. And I would encourage you to read the Ninth Circuit's opinion in Allen because it highlights. What about this? What about this new case, the 28-J letter, U.S.P. Annori? Ansari, yeah. Ansari does not address the constitutional legitimacy of providing an audio-only feed of trial proceedings. And we disagree that providing audio and video makes a closure partial. We disagree with that part of Ansari. But it doesn't even touch on providing only audio of what's happening inside a courtroom. And it's a fundamental infringement of my client's public trial rights. My time's up. I'm over time. I'm happy to address any other questions. Yeah, let's keep going for a minute since the day is young. Let's talk about, so, I guess one thing that's concerning me is that we can all walk in with no evidence of diligence to find out what's going on in the courtroom that morning, other than we got a link saying there was an audio feed. But under your position, any feed, video, audio, whatever, is a total closure. But everybody went in that morning and nobody said, wait a minute, judge, just want to be clear before we bring the veneer in that we object to this closed trial. It is a violation of my constitutional rights to an open trial. So on the audio, video question, I take the point. But I still think. I mean, I think, don't you think if you want to at least get outside of plain error review, that that objection had to be made at the start of the trial? Because your arguments are functionally the same. In fact, they are the same. You don't care whether it's audio or video. You're just picking the low-hanging fruit and saying video or audio only is even worse. Well, that's very true. But there's no. I will. Because the findings that the cases require say that findings must be made after objection. That contemplates that if there's a closed proceeding, the findings justifying it don't have to be made until after there's an objection. Well, I disagree with that. Do you disagree that that's what the cases say? I do. Because I can pull them up and. Well, I know that there's some discussion. But there's also cases like Presley and Press Enterprise where no objection is made and the court still demanded that findings be made. So my only point is that the case law is not quite as clear as you're making it sound. And the only other thing I was going to. Well, maybe it's not as clear as you're making it sound. Fair enough. Okay. Press on. One of you is the judge and one of you is not the judge. This is true. This is true. I'm at a disadvantage in this situation. But what I was going to say is look at the discussion at pages 98 to 106 of Volume 3 of the record and tell me the district court is informing the parties that no one outside of trial participants will be allowed inside the courtroom. That statement is not made. Now, you're going to say, well, the defense counsel should have asked for clarification, but the district court is the one who is intentionally closing the courtroom. So, counsel, let me ask you a couple of things. Okay. So the first is, isn't this highlighting, and this is I think in response somewhat to Judge Carson's concern, how important it is what the assumption was walking in the door. I don't know what this says about your other arguments. We're just talking about jury selection right now. Right. But if you were walking in the door and you thought, okay, it's okay to just have, I'm going to have audio-visual, that's okay. Yes. If that, what actually happened was contrary to that assumption, because your understanding of total closure is audio plus visual, right? Or that's at least arguably what, yeah, yes. Okay. If you did not have that, that's when you object. So, in other words, you had no reason to object before there was a problem. This is correct. Okay. So we make both arguments, right? And plain error doesn't have to apply to all of the arguments. So we argue. That's very true. Right? So we argue that the audio-visual for the entire trial is still a problem. But I understand that's a bigger ask. And it creates risks of conflict, circuit conflict. And so the narrower issue is we went in with the understanding, just as you point out, Judge Rossman, that audio-visual would be provided. And as soon as we learned that only audio was being provided, we objected. Okay. And that creates de novo review. So the government only addresses the jury selection closure claim under plain error. That is correct. So if you adopt the framing, the government's framing, what is the applicable law for plainness? Well, the applicable law is Waller and Presley. And we could rely on Allen, too, right? Yes, although Allen had not been decided at the time that the district courts. But don't we look at plain error from the time of the appeal? Yeah, that, well, I'm not sure, to be honest. That sounds right to me. Let's say that's right. Yeah, if so, then you can rely on Allen as well. But, again, it just seems inconsistent to me with Rule 51B and baseline principles of preservation to say that it's enough to trigger an obligation to object by sending a link. There's no discussion in the courtroom. There's no information provided. There's no order sought. There's a link. And he doesn't find out for two hours, and now all of a sudden we're outside de novo review. But I think we do know that he got the link, and it must have been persuasive because when the attorney got objecting, it wasn't, boy, this blindsides me. I thought I was going to be in for, you know, sitting in the courtroom and with all the bonier right there with me. He knew that from the instant the bonier process started. Fair enough, but he was blindsided that it was not both audio and visual. Well, so that comes back to that your only concern was of the visual part about it. I mean, that's the only part that he could make any claim he didn't basically consent to. Well, if that's the way the court sees it, like I talked about, we don't think enough information was provided about any of it. But then we have to decide whether the public trial component requires an audio and visual or whether audio would be sufficient. And I just return to the point that the case law and the Constitution are clear that a fundamental component of the public trial right is visual observation. It is not clear at all. I disagree with you in the context of whether that could be remotely achieved or whether it has to be achieved in person is absolutely not clear because it never came up before the COVID situation. Well, we'll have to agree to disagree on that, Judge Ebel. But if you do hold that it's not a total closure to provide audio only, you will create a circuit split with the Ninth Circuit's decision in Allen, which is carefully reasoned in terms of the importance of public observation of the public trial right. Do you have as part of the record the transcript from the pretrial conference? We do. It's at 98 to 106. Well, the relevant discussion is 98 to 106. What would the pretrial conference transcript tell us about whether there were going to be people allowed in the courtroom? Well, that's what I'm saying is that that statement is never made. So what Judge Riggs is telling the parties is this courtroom looks unlike any other courtroom you've seen. It's been drastically modified to allow us to comply with social distancing requirements. The jury is going to be here. The witnesses are going to be here. But no statement that no family member, no one from the public, no one from the press will be allowed to physically enter the courtroom. OK, so let me I mean, and I'm not saying this isn't the case, and I'm sure if Mr. Keeney knows something different, he's going to tell us. But it just seems unlikely, knowing how a trial breaks down, that if the courtroom was going to be closed, that that's not coming up at some time. I mean, I agree. I agree. But, you know, OK, so I'll take your word for it. And the only other thing I would say is look at the government's response that after the first session of voir dire. The government didn't start the day by asking the court to clarify its ruling on audio only. It was only after the first session, which suggests that they, too, were under the impression that it would be audio visual. Counsel, can I. Is it all right if I go ahead? Can I ask you to respond to the government's contention that you should be faulted for not pursuing some additional remedies? How about we start over? How about we bring a new panel? I didn't see a citation for that authority. I think it comes from the plain error analysis where they're talking about whether the court should exercise its discretion. OK, so to review the error. So it would make sense perhaps to understand that in terms of the government's contentions about the fourth prong of plain error. But outside of that. Well, that's where it appears in their brief. And as you pointed out, they never addressed the issue on the merits as if it were de novo review. And the only point they fault, the only time they faulted us for not suggesting a remedy was in on the fourth prong. And I'm not aware. I mean, outside of objecting to the public trial violation by writing audio only, I don't see anything in the cases that requires us also to identify the remedy or to explain to the court how it should cure it. The government cites a prosecutorial misconduct context for taking curative action. But this you would contend that that's different. That is that it's a it's a different situation because the district court is well aware of, you know, if I violated someone's public trial rights, the way to fix it is to is to hold a public trial. I mean, that that really is the only viable remedy. And so to say, well, you needed to say to start over. Instead of the district court just saying, yeah, I should start over. It doesn't make sense to us. Is is that because the discussion centered centered around the provision of video feed? I mean, that the discussion with the district court was not, hey, start over. Public's got to be in here. Can't do video. Can't do audio. It was more to the effect that, hey, we've done two hours worth of this trial. It was audio only. We've got to have video, judge, if we're going to proceed. Was that the nature of the discussion with the district court? So so I was with you right up until the very end. OK, because the last two were. Well, just that last part, because the statement wasn't we've got to have video going forward. The statement was providing audio only for those first two hours infringed my client's constitutional rights. OK, so there was certainly no suggestion on the part of counsel that all of this is fine as long as we have video going forward. The suggestion was by providing only audio for that first two hours. You violated my client's. But did they? Here's the key question. Did counsel at that point say and therefore I request a mistrial and a recomposition of the matter? Or maybe that was too late for that. Maybe the jury is already. Well, maybe just the one year makes it too late. But but and therefore counsel did not suggest a remedy. I mean, he was simply observing a fact. It wasn't that that statement about. And therefore, what do I want? B is very critical to what he has invited the district court to do. And you can invite the district court even to commit a clear error. I disagree with that. The statement that that counsel made was very clear about objecting to only providing audio for the first two hours. And the only viable remedy for a violation of a public trial is to hold a public trial. But he didn't ask for that. He said the remedy. The court said, well, the remedy will be we'll fix it when we come back. And everybody came back. Nobody ever said that's not an adequate fix. No, there was there was no statement. We'll fix it when we come back. The statement was you've objected to the fact that I only provided audio for the first two hours. And I'm going to work through the analysis and explain why that was justified. And so there's there's no oh, there's nothing to worry about here. There was a substantive ruling from the court in response to that objection about the validity or constitutional legitimacy of only providing audio. Was there ever an explicit request for a mistrial? No. And it wasn't needed. But for these reasons, your honors, we'd ask that you vacate the convictions and remand. Thank you. Thanks, counsel. Thanks for indulging the additional questioning. It was enjoyable. OK. Oh, it was all fun. Mr. Keeney. Good morning, your honors. I'm still Emil Keeney for the United States. And I'll start by one I think easily correctable point and then go on to some of the again some of the questions you asked subject to your whatever you want to talk about. But I heard defense counsel say that Pressley and Press Enterprise both involved situations where there was no objection. And the Supreme Court held, well, there has to be Waller findings anyway. And that counsel's mistaken. In both cases, there was objection. In Press Enterprise, the reporter, the newspaper rather, objected before the vortier proceedings that issue in that case. And in Pressley, defense counsel objected as well. But don't those cases support the proposition that in this unique context, the district court has unique sua sponte obligations? No, I don't think so, your honor. I think I would go back to Waller's statement that when there's an objection, you have to make findings. And I understand there's an issue about later on whether counsel knew about the audio only feed. But that's the law. And I think you can also look at Levine v. United States, which we didn't discuss in detail, but it's cited in our brief. And that also involves a holding by the Supreme Court where counsel knew a proceeding was closed and didn't object. And the Supreme Court said you have to – But Levine doesn't say anything about – it says it has to be timely. But it doesn't say what timely means. Well, I think you could infer from that what timely meant in that context because you had a grand jury proceeding going on, or at least discussion of confidential grand jury materials going on. And then the court turned to other things that weren't confidential and there was no objection. And the Supreme Court said you got to object. So this line from Pressley, the conclusion that trial courts are required to consider alternatives to closure, even when they are not offered by the parties, is clear, not only from this court's precedents, but also from the premise that the process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system. So that's from Pressley, and that's consistent with the argument you're making? Yes, because what Pressley is talking about is one of the four Waller findings that needs to be made. And the Supreme Court earlier said the district court's obligation to make those findings occurs when there's an objection. So I would read those two cases together and not take them apart. The other thing I want to talk about is whether defense counsel had notice of the audio-only feed. I think defense counsel did. Defense counsel never denied receiving the link. He said, I just thought it included an audio feed. The government's attorneys knew that it contained an audio feed, and that's why they consulted with the criminal chief from our office and then raised the issue with the court. So the fact that when he did discover that the video was not included, the fact that he only objected to the fact that he thought video was going to be included as well as audio, is evidence that he knew going in that there would be at least some kind of a remote feed. And he certainly knew that when he started doing the voir dire and the juror panel wasn't there in the courtroom, you know. I mean, he wasn't in the courtroom with them. I mean, they were in the other remote area. Well, Your Honor, the jury veneer was actually. I know, but I mean, he, right, right. But the feed to the public is what I meant to say, the feed to the public. There was no public in the courtroom. Right. I think that would be my answer. If we talked about whether he had noticed before the proceeding even began that the public wouldn't be there. But I mean, he certainly knew it then. When the veneer started, there wasn't any public available. Right. When you show up. He knew right off the bat. We think he had noticed before, but even if the administrative order doesn't provide notice, then you show up in the courtroom and he says, it was important to me, and he says in his brief, it was important to me that my family and friends be there. They're not there. The jury veneer is taking up all the room in the spectator gallery. He's on notice at that point to raise any public trial issue he has. Maybe not the audio-only feed, though. Right. Can we talk about that? So you agree that the audio-only problem, the government discovered it around the same time that counsel discovered it, and that's when it was brought to the court's attention. I think we discovered it before. You brought it to the counsel. That's right. Because you thought that that was a matter of constitutional significance, right? Right. We weren't sure. You still think that now, right? Right. We think that it was sufficient, the audio-only feed was sufficient. That's what we've argued at least under the first. Well, that's different. I guess my question is, let's just concretize it in terms of Allen. You disagree with Allen. Right. Why do you disagree with Allen that just having audio is not a matter of constitutional significance? Well, because the Allen, I think, case like Watt, we disagree with Allen because we think that the audio-only feed satisfied the purposes of the Sixth Amendment, which are to make sure that so the public can understand the defendant is being treated fairly. So the public is to impress upon the participants, meaning the judge and the lawyers, that there's going to be, the public is watching. You've got to. The public is literally not watching. Or at least the public is hearing. Yes. Someone knows what's going on. But what about the, it's not just that someone knows what's going on, right? I mean, because the Supreme Court has said transcripts aren't enough. Transcripts alone are not enough. That's true. Isn't this sort of the equivalent of a transcript in real time? No, I think hearing provides a lot more information than a transcript does. You can hear the tone of voice. You can hear, I think that's a lot of what doesn't come across in a transcript still comes across in audio. So is your position different now than it was when you brought this issue to the court's attention in the district court? When the government got up and said, we think there might be a problem here because the link was not complete, it only had audio, would you not, why did you bring that to the court's attention if it wasn't a matter of constitutional significance then? I'm not saying it's not an issue. I think it's, the reason the prosecutors brought it up is because they recognized that it presented an issue, a possible argument, that the trial was not being conducted in accord with the Constitution. They never definitively stated, oh, we think it is unconstitutional. They never stated a position at all on that. But we think it was. I'm not suggesting there's some sort of estoppel problem going on, right? But it just strikes me that that is support for how to read this record, which admittedly is not very clear on what everybody's assumption was going in, that once the problem was discovered, it was a problem for the government as well, that there was not a complete audio plus visual link. Also, we recognize that it was an issue and that the district court should address it. I think that's all I can read from the transcript. I don't know what was in the prosecutor's minds, but that's what's in the transcript. They recognize an issue. They say, hey, this is something we want you to think about and make findings and explain why it's being done this way. With respect to – but I think that suppose you all disagree with me and you think, well, no, he didn't have adequate notice. I think then you come to the point that you all were discussing towards the end of my colleague's argument, which is what's your obligation with respect to asking for relief? And as one of you pointed out, we've analogized this to the prosecutorial misconduct context. And so I think the reason that works is because in that context, also, for example, it can also work in a context where, say, a witness blorts out something they shouldn't have at trial. In that sense, the bell has – those are contexts in which the bell has been rung. The jury has heard something improper. And so you've got to ask the court if you – what your precedents say is if you think, you know, the Titanic has hit the iceberg and there's nothing that can be done to save this proceeding, you've got to say that. And defense counsel had an opportunity to say that, both at the lunch break and, as we've cited at page 11 of our brief, later on at the end of the voir dire, district court asked, look, does anyone have a problem with how I've done this jury selection today? Defense counsel said no. Because he already objected earlier. He didn't have to keep objecting. Well, he said he didn't – well, he's saying he didn't have to raise this remedy question. Well, he didn't have to continue to object to his jury selection problem, right? And he doesn't have to continue to object. But if you're saying – if defense counsel thinks that there's an error that makes this whole proceeding, it's unfixable, it's incurable, and there's nothing that can be done about it now, then I think he has to say that to the district court and not go through the whole next day, two days of trial. I think that totally makes sense in the context of the fourth prong of plain error. I am persuaded, at least right now, by that, by the government's position on the fourth prong as it relates to the request for remedy. But if this claim is reviewed de novo, I don't see how there is any additional obligation on the defendant beyond stating the objection in a timely fashion. Well, I think that even when prosecutorial misconduct claims are reviewed under ordinary standards of review, that the court still considers whether the remedy that the defendant asked for was appropriate. That's a unique context, you'd agree, though. Well, I think it's similar, though, in the fact that if, say, a prosecutor says something that's obviously improper and has a potential to unfairly prejudice the jury against the defendant, the defendant has a choice of things he can ask for. I can say strike it or admonish the prosecutor, give the jury a curative instruction. But if defense counsel thinks there's nothing that can be done, and that's similar to their position here, nothing can be done to fix this error now, defense counsel has to say something about it. I think that logic applies to that as well. And then how do you reconcile your position with the, you would agree that there's a sua sponte obligation of courts in the public trial context, right? Which sua sponte obligation, I'm sorry? To make findings, to find the least restrictive means if there is going to be a closure. Do you agree? I don't think it's sua sponte because of the statement on Waller that when the district court has to make those findings in response to an objection, the courtroom is closed over objection. But when there's an objection, the court has to make those findings. Now, the defense made an objection. It's kind of unclear what they're referring to, exactly what the scope of that objection is at lunchtime. But the district court goes through the whole Waller analysis. And that's another claim that they're raising too, is that, well, the district court's findings were inadequate. And again, if defense counsel thought the district court was making a mistake, I think that was the time to say so. And especially when the district court asks later on, am I doing anything wrong here? Defense counsel says no. I don't know what the district court was reasonably supposed to do after hearing all that from defense counsel. At that point, if the district court had said, mistrial, we're going to get rid of this jury, defense counsel might say, hey, now I've got the double jeopardy protection. Well, not before the jury is sworn in. No, no. But I mean, at some point, if the defendant never said, I want to mistrial, I want to go again. So if at any point, having the defendant never requested that, the court said mistrial, that could, after the jury was sworn in, of course, that could raise a different question. I suppose it would. I didn't think about that issue, and since it hasn't been briefed by the parties, I can't really offer a definitive answer to it. But I think if it's defense counsel's request that there be, I guess in this context, I wouldn't call it a mistrial, but a new veneer panel called, then I don't think they would have grounds to object in the future to that, if that's what you're getting at, but I'm not sure. Yeah, what I was getting at is that it could have been fixed before a mistrial, I mean, before double jeopardy would ever be invoked. Correct. And it wasn't. It was not. And so if it wasn't objected until later, now a jury has been impaneled, there may be very different consequences. You would have to go through that analysis and determine whether there was an overriding, I forget the exact term, but there's something like an overriding necessity for declaring a mistrial after the jury's been impaneled. And so all of a sudden we've got quite a more different issue because there was no objection timely made. In fact, to the contrary, an affirmative statement that he had no problem. I guess that would present a different issue if it had been raised during the trial itself, but it wasn't raised there either. I mean, after the jury impaneled, I mean. Are you aware of a case where something's happened at trial and someone says, Your Honor, I object. Mr. Keeney's introduction of this evidence is improper, blah, blah, blah. And the court says, I'm going to take a recess and study the issue. And the court comes out and says, I've studied the issue, and I'm going to admit the evidence subject to certain limitations, and they're not going to be allowed to talk about this, but they're going to be allowed to talk about that. Does anyone have a problem with that? And everybody says, no, no problem, Judge. Have you ever seen a case that suggested that that was a revocation of the prior objection or that it was somehow a waiver of the prior objection or something like that? I can't think offhand about a case with those specific facts or even a situation similar to that. But I think the same principle would hold. Well, I think it's different in an evidentiary context, too, because there you're talking about something that's prospectively going to happen. Right. And so if I tell you as a district judge, Look, here's my problem with the evidence. It violates this rule, and it's going to prejudice my client in this way. And the district court says, I understand. I don't agree. I overrule your objection. Then I think that I don't know that there's any additional obligation to object in that context, and I'm not sure if I'm even answering your question, so let me know if I'm getting off track. I think your answer was you don't know of any case like that. Right. I don't know of any. Because it seems to me in the context of this case, that might be important. If you tell a district court, to me it just seems logical that if you tell a district court you don't have a problem with something, the district court's entitled to rely on it, even if you, regardless of what you said before. And I think that's why attorneys have to be careful what they say when they object. Counsel, do you agree that if we find the jury selection closure error preserved, that this is structural error? You mean, well, there's several different jury closure, the exclusion of the public, or are we talking about the audio only thing? I'm talking about the audio video. The Allen, essentially the issue in Allen. If you find it's preserved and so forth, then I would rely on our argument that he should have asked for the remedy to. I think if you find that it's preserved and that you disagree with our position, that is a proper partial closure of a trial and that the audio only is not sufficient, if you agree with Allen. Well, we wouldn't say it's a proper partial closure. We'd say it's a total closure. Right. And is that reviewed as structural error? That would be structural error, but I would think, but then again, I rely on my earlier argument that even if some error occurred, that he should have asked for the remedy that he needed at the time. You maintain that argument even in the structural error context? Right. I think that's true because it's more of a waiver type argument, which the Supreme Court has said. I see. Okay. You can waive your public trial arguments. The Supreme Court has, in other contexts, said that structural error does not mean that you have to have a new trial. That's right. We can agree with the structural error and still say to the trial, we're not going to reverse the trial because of your waiver or because of other contexts. Yeah, there are other contexts, maybe not present here. But there's nothing, it's not a poison pill if it gets called a structural error. No, we would still rely on the waiver. It's no honor, but it's not a poison pill. Pardon?  No, I don't think the district court would want you to say that. But if you do, I think the defendant still had to ask for the remedy needed at the time when the error could have been cured. I don't know if, oh gosh, I'm sorry, I'm over the time. Well, your opposing counsel was over by 15 minutes. Right. We might joust with you a bit more if the panel wants to. I don't have any more questions. Nor do I. I don't either. Okay. Well, you're off the hook. Well, thank you very much for your time today, and we ask that you affirm. Thank you. Thanks to both of you for your arguments. Interesting case, difficult case. The counsel are excused and the case will be submitted.